| | |
|---|---|
| **LaMONICA HERBST & MANISCALCO, LLP**<br>3305 Jerusalem Avenue<br>Wantagh, New York 11793<br>Salvatore LaMonica, Esq.<br>Holly R. Holecek, Esq.<br>Telephone: (516) 826-6500 | Relates to Hearing Scheduled for: October 25, 2016 at 10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:                                                              Chapter 7

VERONICA STOLARSKI,                              Case No.: 09-23086 (RDD)

               Debtor.
---------------------------------------------------------X

**REPLY IN FURTHER SUPPORT OF FORMER CHAPTER 7 TRUSTEE'S
MOTION FOR ENTRY OF AN ORDER: (I) REOPENING CHAPTER 7 CASE UNDER
SECTION 350(b) OF THE BANKRUPTCY CODE; DIRECTING THE APPOINTMENT
OF A CHAPTER 7 TRUSTEE UNDER BANKRUPTCY RULE 5010; (III) WAIVING
THE FILING FEE; AND (IV) GRANTING OTHER RELIEF**

      Marianne T. O'Toole, the former Chapter 7 Trustee (the "Trustee") of the estate of Veronica Stolarski (the "Debtor"), by her counsel, LaMonica Herbst & Maniscalco, LLP, submits this reply in further support of the Trustee's motion for entry of an Order: (i) reopening the above-captioned Chapter 7 case under 11 U.S.C. § 350(b) (the "Bankruptcy Code"); (ii) directing the appointment of a Chapter 7 Trustee pursuant to Rule 5010 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); (iii) waiving the filing fee; and (iv) granting such other and further relief as the Court may deem just and proper (the "Motion") [Dkt. No. 11] and in further response to the Debtor's objection to the Motion (the "Objection") [Dkt. No. 19], and respectfully sets forth as follows:

**PRELIMINARY STATEMENT**

      Section 541 of the Bankruptcy Code establishes unequivocally that assets which exist as of the date of the filing are property of the estate. Here, the Debtor was injured by transvaginal mesh that was implanted four years prior to the filing of her bankruptcy petition and receiving a

discharge. The Debtor's claims relating to the transvaginal mesh are sufficiently rooted in her bankruptcy past so as to fall under section 541 of the Bankruptcy Code. In the alternative, a determination of, inter alia, when the Debtor's claims arose and whether the Debtor knew or should have known of the claims at the time of the filing are factual issues which require discovery in this contested matter.

For these and the reasons set forth below, the Objection should be overruled and the Motion should be granted.

## BACKGROUND

1. The Debtor had a transvaginal mesh implanted on March 2, 2005. See Debtor's Affidavit [Dkt. No. 19-1] at 2, ¶ 8.

2. On October 20, 2008, the United States Food and Drug Administration (the "FDA") issued a public health notification titled "Serious Complications Associated with Transvaginal Placement of Surgical Mesh in Repair of Pelvic Organ Prolapse and Stress Urinary Incontinence." See U.S. Food and Drug Administration, Medical Devices, Medical Device Safety, Safety Communications, Public Health Communications (Medical Devices), http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/PublicHealthNotifications/ucm061976.htm (last visited October 18, 2016).

3. On June 23, 2009, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor received a discharge on October 21, 2009 and, on October 28, 2009, the Debtor's Chapter 7 case was closed as a "no asset" case.

4. On July 12, 2011, the FDA issued a second public health notification titled "UPDATE on Serious Complications Associated with Transvaginal Placement of Surgical Mesh for Pelvic Organ Prolapse: FDA Safety Communication." See U.S. Food and Drug Administration,

2

Medical Devices, Medical Device Safety, Safety Communications, Public Health Communications (Medical Devices), http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/ucm262435.htm (last visited October 18, 2016).

5. On October 29, 2012, the Debtor filed a Short Form Complaint in the United States District Court for the Southern District of West Virginia (the "Debtor's Complaint") and commenced an action (the "Action") in the multi-district litigation captioned *In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation* (the "MDL"). A copy of the Debtor's Complaint is annexed as Exhibit A.

6. According to the First Amended Master Long Form Complaint and Jury Demand in the MDL (the "Master Complaint"):

   a. The Products were unreasonably susceptible to degradation and fragmentation in the body.

   b. The Products were unreasonably susceptible to shrinkage and contraction inside the body.

   c. The Products were unreasonably susceptible to "creep" or the gradual elongation and deformation when subject to prolonged tension inside the body.

See First Amended Master Long Form Complaint and Jury Demand, http://www.wvsd.uscourts.gov/MDL/amsinc/pdfs/FinalMasterComplaint.pdf at 10, ¶¶ 35-37 (last visited October 18, 2016).

7. The Debtor's Complaint asserts the following claims for relief from the Master Complaint in the MDL: negligence, strict liability – design defect, strict liability – manufacturing defect, strict liability – failure to warn, strict liability – defective product, breach of express warranty, breach of implied warranty, fraudulent concealment, constructive fraud, discovery rule, tolling and fraudulent concealment, negligent misrepresentation, negligent infliction of emotional

3

distress, violation of consumer protection laws, gross negligence, unjust enrichment, loss of consortium (by the spouse) and punitive damages. See Exhibit A.

8.  In or around December 2015, the Trustee was informed by the Debtor's personal injury attorney that an offer to settle the Action was made and, thereafter, the Motion was filed with the Court.

9.  The remaining procedural and factual background of this case is set forth in the Motion, which is incorporated by reference as if fully set forth herein.

**REPLY**

**I.    The Action is Property of the Estate**

10. Contrary to the Debtor's assertion that the Action is not property of the estate, the Debtor's claims in the Action arise from the pre-petition implantation of the transvaginal mesh, see Debtor's Affidavit [Dkt. No. 19-1] at 1, ¶ 5, and are sufficiently rooted in the bankruptcy past for them to be property of the estate.

11. Under the Bankruptcy Code, a chapter 7 trustee has the exclusive authority to administer and dispose of property within the bankruptcy estate. See 11 U.S.C. §§ 704(a)(1), 541(a)(1). Among her responsibilities, a trustee is charged with the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 U.S.C. §§ 704(a)(1), 541(a)(1).

12. As defined in the Bankruptcy Code, "property of the estate" is broad and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). See also United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983); In re Jackson, 593 F.3d 171, 176 (2d. Cir. 2010). Legislative history indicates that section 541 is given

4

a broad definition to include "all kinds of property, including tangible or intangible property . . . and all other forms of property." H.R. Rep. No. 95–595, at 367 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6323. "Property" is "construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." Segal v. Rochelle, 382 U.S. 375, 379 (1966). Congress intended to bring "anything of value" that a debtor owns into the estate. H.R. Rep. No. 95–595, at 175–76. Bankruptcy courts are required to look to state property law to determine the property that is to be included in a bankruptcy estate. See Butner v. United States, 440 U.S. 48, 55 (1979).

13.   Under New York law, a claim accrues under New York law when "all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court." Aetna Life & Casualty Co. v. Nelson, 67 N.Y.2d 169, 175 (N.Y. 1986). However, while the stated cause of action must have existed at the time of filing, the actual accrual date for state law purposes is not always the "critical" factor for determining whether a cause of action is property of the estate. Winick & Rich, P.C. v. Strada Design Assocs. (In re Strada Design Assocs.), 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005). The United States Supreme Court and courts in the Second Circuit have held that, when a cause of action arises after the filing of a bankruptcy petition, the claim belongs to the estate if it is "sufficiently rooted in the pre-bankruptcy past." Segal, 382 U.S. at 380; Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (finding agency agreement executed post-petition was an asset of a debtor's estate where agreement was retroactive to pre-petition date); In re Salander, 450 B.R. 37, 46 (Bankr. S.D.N.Y. 2011) (citations omitted) ("Claims that are immature at the date of filing are property of the estate if they are 'sufficiently rooted in the pre-bankruptcy past and so little

5

entangled with the bankrupts' ability to make an unencumbered fresh start.'"); In re Osbourne, 490 B.R. 75 (Bankr. S.D.N.Y. 2013).

14. Under the analysis set forth in Segal, courts generally employ a three-step process to determine whether a claim is property of an estate:

> (1) determine the extent to which the claim is rooted in the pre-bankruptcy past; (2) determine the extent to which it is entangled with the debtor's ability to make an unencumbered fresh start; and then (3) with both considerations in the balance, determine whether, in view of the purposes of the Bankruptcy Act (now the Bankruptcy Code), the claim is more properly categorized as prepetition property that should come into the estate or a post-petition asset that the Debtor should take free of the claims of pre-bankruptcy creditors . . . this analysis does not turn on whether, under state law, the claim had accrued as of the petition date.

In re Borchert, 2010 LEXIS 140 at *8 (Bankr. N.D.N.Y. Jan. 8, 2010); Casey v. Grasso (In re Riccitelli), 320 B.R. 483, 490-491 (Bankr. D. Mass. 2005).

15. In In re Osbourne, co-debtors argued that a malpractice claim did not accrue under state law during their Chapter 7 case and was therefore not property of the estate. 490 B.R. at 83. The Osbourne Court (Morris, C.J.) disagreed and reasoned that the claim for malpractice was "sufficiently rooted in the bankruptcy past" because it arose out of acts and omissions that occurred prior to the commencement of the Chapter 7 case. Id. As recognized by the Osbourne Court, "[w]hile it is true that under New York state law a claim accrues only when 'all of the facts necessary to the cause of action have occurred so that the party would be entitled to obtain relief in court[,]' the state law accrual date is not a determinative factor for whether a claim is property of the estate." Id. The Osbourne Court also considered that, since the debtors had already received a discharge, allowing the Chapter 7 trustee to exercise control over the cause of action would not hinder the debtors' fresh start. Id.

16. In Salander, the court considered whether a debtor's fraud and forgery claims against a lender were property of her bankruptcy case. 450 B.R. at 46. The debtor contended that

6

she had only recently discovered the extent of the asserted claims. Id. The Salander Court reasoned that, while the debtor only recently learned of the extent of the claims, "the activities that form the basis of her claim arose prior to the date of filing and are 'rooted in her prebankruptcy past.'" Id. Thus, the debtor's knowledge was irrelevant. The Salander Court further considered that the debtor had been given a fresh start by obtaining a discharge and that the trustee's administration of the claims on her behalf did not hinder that fresh start. Id. at 47.

17.     In In re Stanley v. Community Bank, N.A., et al., 2009 U.S. Dist. LEXIS 8002 (N.D.N.Y. February 4, 2009), a pro se plaintiff commenced an action against various defendants for, inter alia, their alleged role in the plaintiff's husband's fraudulent procurement of loans in her name. Id. at *1. The United States District Court for the Northern District of New York found that the claims were clearly property of the bankruptcy estate because they arose solely out of the alleged complicity in the plaintiff's husband's pre-petition fraudulent conduct. Id. at *7.

18.     As in Osbourne, Salander and Stanley, the Debtor's claims in the Action arise out of pre-petition conduct and are sufficiently "rooted" in the pre-bankruptcy past. The facts in this case are distinguishable from In re Ross, 2016 Bankr. LEXIS 1665 (Bankr. E.D.N.Y. April 14, 2016), a case cited in the Objection. In Ross, the debtor suffered no injury pre- or post-petition and the settlement in that case was based upon a promise not to bring a suit in the future. Id. at *2. Indeed, the Ross Court opined that "had the Debtor suffered an injury, the answer would be different." Id. at *3.

19.     Here, the Debtor commenced this bankruptcy case on June 23, 2009. As set forth in the Debtor's affidavit [Dkt. No. 19-1], the transvaginal mesh was implanted on March 2, 2005. The Debtor's claims in the Action arise from the defective transvaginal mesh and the damages that resulted from that claim. See Exhibit A. As in Osbourne, since the Debtor already received a

discharge, allowing the Trustee to exercise control over the Action and any settlement of the Action will not hinder her "fresh start". Instead, it provides the only means by which the Debtor's discharged creditors may recover from the Debtor's estate.

20.     Courts in other jurisdictions have found similar assets to be sufficiently rooted in the debtor's pre-bankruptcy past so as to be property of the debtor's estate. In In re Webb, 484 B.R. 501 (Bankr. M.D. Ga. 2012), a debtor was diagnosed with congestive heart failure in July 2007, before his 2009 Chapter 7 filing. Id. at 502. After receiving a discharge, the debtor received a class action settlement in a product liability case for injuries arising from medicine taken prepetition. Id. The debtor did not know the medicine caused the injury until he saw a commercial, well after his discharge, claiming that the medicine causes congestive heart failure. Id. Relying on Segal, the Webb Court found that the debtor's products liability claim was sufficiently rooted in the pre-bankruptcy past to be property of the estate. Id. at 505. See also In re Alvarez, 224 F.3d 1273, 1278-79 (11th Cir. 2000) (holding that a claim is property of the estate regardless of when it accrues, so long as it is adequately linked to the pre-bankruptcy past).

21.     For these reasons, the claims asserted in the Action are sufficiently rooted in the Debtor's pre-bankruptcy past and are property of the estate. Because the Action is property of the estate that was not administered, cause exists to reopen the Debtor's case under Bankruptcy Code § 350(b) and Bankruptcy Rule 5010.

## II.     Alternatively, Discovery is Necessary

22.     Pursuant to Bankruptcy Rule 9014, Bankruptcy Rules 7026-7037 governing discovery apply in this contested matter. See FED. R. BANKR. P. 9014.

23.     As set forth above, the FDA issued a public health notification on October 20, 2008 (nearly 9 months prior to the filing date) warning of serious complications associated with

8

transvaginal meshes. According to the Master Complaint in the MDL, the transvaginal mesh was "unreasonably susceptible" to, inter alia, degradation, fragmentation, shrinkage, contraction, gradual elongation and deformation inside the body. The Debtor's Complaint asserts seventeen (17) claims for relief from the Master Complaint, including negligence-type claims, strict liability claims and fraud claims, each of which carries a different burden of proof and provides for, inter alia, a different statute of limitations. Among other things, when the Debtor's injuries arose and whether the Debtor knew or should have known of the claims as of the filing date and are discoverable and relevant.

24. Accordingly, should there be a question as to whether the Action is property of the estate, the Trustee is entitled to discovery as to, inter alia, when specifically the Debtor's injuries arose and whether the Debtor knew or should have known of the claims set forth in the Debtor's Complaint at the time of the filing.

25. For these reasons, the Trustee respectfully requests that the Objection be overruled and that the Motion be granted.

Dated: October 18, 2016
      Wantagh, New York

                              **LaMONICA HERBST & MANISCALCO, LLP**
                              Counsel to Marianne T. O'Toole, Former Chapter 7 Trustee

                By:    *s/ Salvatore LaMonica*
                         Salvatore LaMonica, Esq.
                         Holly R. Holecek, Esq.
                         3305 Jerusalem Avenue
                         Wantagh, New York 11793
                         Telephone: (516) 826-6500